JOURNAL ENTRY AND OPINION
{¶ 1} Alex Bradley ("Bradley") appeals his conviction received in the Cuyahoga County Court of Common Pleas. Bradley argues that the State of Ohio ("State") presented insufficient evidence to support his conviction and his conviction is against the manifest weight of the evidence. For the following reasons, we affirm the decision of the trial court.
 {¶ 2} This case arises out of events that occurred on March 2, 2005. On that day, Renetta Smith ("Smith") drove Bradley to his ex-girlfriend Latasha Cook's ("Cook") house. When they arrived, Cook was not there but as they waited, she drove up the driveway with her friend, Ellen Taylor ("Taylor"), riding in the passenger seat. While Cook and Taylor sat in the car, Bradley approached and began speaking to Cook through the driver's side window. After a while, Bradley got into Cook's backseat and they continued their conversation.
 {¶ 3} Smith testified that she grew impatient with Bradley and exited her car, approached Cook's vehicle, and got into the back seat. Smith, Cook and Taylor each testified during trial but gave conflicting testimony concerning what occurred inside Cook's vehicle. Each of the parties admit that Cook began driving to the house of a girl named Sharita. They also admitted that while Cook was driving, others were smoking PCP inside the vehicle, but each witness, including Cook, denied that they used the substance. Additionally, each party testified that Bradley appeared upset at Cook for calling his parole officer. The witnesses testified that Bradley asked Cook several times why she called his parole officer and that Cook argued back to Bradley. Taylor testified that both Cook and Bradley were upset and arguing loudly. Neither Cook, Taylor, or Smith testified that Bradley had a gun in his hands while in the vehicle.
 {¶ 4} While Cook was driving, she suddenly swerved her vehicle directly in the path of an oncoming police vehicle. Officers Volk and Griffin ("Griffin"), who were inside the vehicle, swerved into a convenient store parking lot to avoid the collision. Cook followed the police car into the lot and stopped. Griffin testified that he became suspicious and exited the vehicle. As he did, he observed Cook standing next to her vehicle pointing and screaming, "there he goes, he has a gun." Griffin followed the direction of Cook's arm and observed Bradley, who exited Cook's vehicle before it came to a stop, running down the street.
 {¶ 5} Griffin testified that he and Officer Volk got back into their zone car to pursue Bradley because he had a bit of a head start on the officers and because heavy snow was falling. The officers followed Bradley, whom Griffin testified was the only individual running in the area. Griffin testified that they caught Bradley about a block away after losing sight of him for approximately ten to fifteen seconds. Griffin stated that the entire pursuit lasted less than a minute.
 {¶ 6} When Griffin and Volk apprehended Bradley they placed him in handcuffs and noted that Bradley was breathing heavily and looked like someone who had recently been running. The officers patted down Bradley but did not recover any weapons. Officer Griffin testified that he stayed with Bradley while his partner went in search of a weapon. After noticing footprints going up and then down a nearby driveway, the officers tracked the prints to a .40 caliber handgun with a loaded magazine located against the foundation of a house. The gun and magazine had moisture on it, but were not covered by the falling snow.
 {¶ 7} Additional officers who had heard Officer Griffin and Volk's broadcast arrived in the area. The officers placed Bradley under arrest and took custody of the handgun and magazine. The gun was later test-fired and determined to be operable.
 {¶ 8} The Cuyahoga County grand jury returned an indictment against Bradley charging him with two counts of kidnapping, one count of felonious assault, and two counts of having a weapon while under disability. The charges of kidnapping and felonious assault contained one- and three-year firearm specifications, a notice of prior conviction specification, and a repeat violent offender specification. Bradley pleaded not guilty, executed a written jury waiver and proceeded to try his case to the bench. Prior to trial, the parties stipulated to Bradley's prior convictions listed in the indictment, a weather report from March 2, 2005, and that the weapon recovered was a firearm.
 {¶ 9} At the close of the State's case, the defense moved for a judgment of acquittal pursuant to Crim.R. 29. The trial court granted the motion with respect to the charges of kidnapping and felonious assault. The defense elected not to present any witnesses but did submit one exhibit. The trial court then found Bradley guilty of the two counts of having a weapon while under disability. On September 8, 2005, the trial court sentenced Bradley to three years' incarceration for each count and then merged the sentences into one three-year sentence. Bradley appeals his conviction, raising the two assignments of error contained in the appendix to this opinion.
 {¶ 10} In his first assignment of error, Bradley argues that the State failed to present sufficient evidence that he committed the crimes of having a weapon while under disability. In his second assignment of error, Bradley argues that his conviction is against the manifest weight of the evidence. Although these arguments involve different standards of review, we will consider them together because we find the evidence in the record applies equally to both.
 {¶ 11} The standard of review with regard to the sufficiency of the evidence is set forth in State v. Bridgeman (1978),55 Ohio St.2d 261, as follows: "Pursuant to Criminal Rule 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."
 {¶ 12} Bridgeman must be interpreted in light of the sufficiency test outlined in State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus, in which the Ohio Supreme Court held:
"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Citation omitted.)
 {¶ 13} In evaluating a challenge to the verdict based on manifest weight of the evidence, a court sits as the thirteenth juror, and intrudes its judgment into proceedings which it finds to be fatally flawed through misrepresentation or misapplication of the evidence by a jury which has "lost its way." State v.Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52. As the Ohio Supreme Court declared:
"Weight of the evidence concerns `the inclination of the greater amount of credible evidence offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.'
* * * The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id. at 387.
 {¶ 14} However, this court should be mindful that the weight of the evidence and the credibility of witnesses are matters primarily for the trier of fact, and a reviewing court must not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the State has proven the offense beyond a reasonable doubt. State v. DeHass (1967),10 Ohio St.2d 230, at paragraphs one and two of the syllabus. The goal of the reviewing court is to determine whether the new trial is mandated. A reviewing court should only grant a new trial in the "exceptional case in which the evidence weighs heavily against a conviction." State v. Lindsey, 87 Ohio St.3d 479,483, 2000-Ohio-465. (Internal citation omitted.)
 {¶ 15} In the present case, the trial court convicted Bradley of two counts of having a weapon while under disability pursuant to R.C. 2923.13, which provides:
"No person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance * * * if under indictment for or has been convicted of any felony of violence * * * if under indictment for or has been convicted of an offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse."
 {¶ 16} In support of their case, the State submitted evidence that Bradley had previously been convicted of two offenses of violence and one offense involving the illegal trafficking in drugs of abuse. These offenses are as follows: CR337559, robbery, a second degree felony; CR337560, felonious assault, a second degree felony; and CR337153, aggravated trafficking in drugs. Defense counsel stipulated to these convictions as well as the weather report of March 2, 2005, showing snowfall, and that the recovered weapon was a firearm.
 {¶ 17} Additionally, the State presented the following testimonial evidence from Officer Griffin: while on duty with his partner, a vehicle swerved directly towards their police car; the car swerved away and followed the police car into a convenient store parking lot; Griffin exited the vehicle and observed Cook pointing and yelling "there he goes, he's got a gun;" Griffin observed Bradley running down the street, pursued him and apprehended Bradley.
 {¶ 18} Griffin did admit that he and his partner lost visual contact of Bradley for approximately ten to fifteen seconds and that Bradley did not possess a handgun at the time of his arrest. However, Griffin testified that after his partner followed a set of fresh footprints, he located a handgun with a loaded magazine next to the foundation of a nearby home. Griffin testified that he believed Bradley disposed of the gun during the ten to fifteen seconds he lost visual contact of the suspect. The gun did not have snow on it, indicating to Griffin that it had recently been placed next to the house.
 {¶ 19} Additionally, Cook, Taylor, and Smith testified that Bradley was angry with Cook for calling his parole officer and that he and Cook were arguing in the vehicle.
 {¶ 20} Viewing the evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have found that the State proved all the elements of two counts of having a weapon while under disability. Therefore, there was sufficient evidence to support Bradley's convictions for these crimes.
 {¶ 21} Moreover, we cannot say that the trier of fact lost its way and created a manifest miscarriage of justice in finding Bradley guilty. Though at trial, Cook, Smith and Taylor did not testify that Bradley possessed a gun, their testimony could be considered conflicting at best. All three witnesses presented different stories concerning the events of March 2, 2005. Additionally, Cook demonstrated her unwillingness to testify by repeatedly asking for a lawyer, expressing her desire to "plead the fifth," and stating that she did not want to testify.
 {¶ 22} After reviewing the entire record, we find that it was not unreasonable for the trial court to consider Griffin to be the more credible witness. Griffin testified to the following: he heard Cook say, "there he goes, he's got a gun;" he pursued Bradley and placed him under arrest; his partner located a gun nearby after following a fresh set of footprints left in the snow; and the gun had moisture but no snow on it. Additionally, the State presented the trial court with evidence of motive. Specifically, Cook's testimony that Bradley was mad at her for calling his parole officer.
 {¶ 23} Based on the foregoing, we find that the trial court did not lose its way in resolving conflicts in the evidence nor did it create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
 {¶ 24} Bradley's first and second assignments of error are overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
James J. Sweeney, P.J., and Kenneth A. Rocco, J., Concur.