JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Appellant, Anthony Johnson (Johnson), appeals his conviction from the Cuyahoga County Common Pleas Court on one count of vandalism. For the following reasons, we affirm.
 {¶ 2} On January 2, 2007, a Cuyahoga County Grand Jury returned a one-count indictment against Johnson stemming out of his wanton abuse of the toilet in the observation cell in which he was located in the Second District City of Cleveland Jail on December 7, 2006. Johnson was serving a term of local incarceration that day when he flooded his cell, an adjoining staging area, and an institutional guard office with water from the toilet.
 {¶ 3} Johnson entered a plea of not guilty to the charge at arraignment on January 17, 2007. The case was set for jury trial on August 8, 2007.
 {¶ 4} According to Johnson, the original indictment charged him with vandalism under R.C. 2909.05, a felony of the fifth degree. The original indictment was brought under R.C. 2909.05(B)(2) which states that "[n]o person shall knowingly cause serious physical harm to property that is owned, leased, or controlled by a governmental entity." According to the State in its brief, before the jury trial commenced, the State made an oral motion to amend the indictment to R.C. 2909.05(B)(1)(b), also a felony of the fifth degree, which the trial court granted on the record. The trial court did not issue a journal entry reflecting the granting of the amendment.
 {¶ 5} Johnson does not dispute that this occurred as he states: "a review of the record demonstrates that the trial court permitted the state to amend this indictment from one *Page 4 
form of vandalism to another form." Although a full transcript was requested by Johnson as a part of the record herein, only a partial transcript was filed.
 {¶ 6} The amendment granted by the trial court changed the indictment to R.C. 2909.05(B)(1)(b) which states:
 "No person shall knowingly cause physical harm to property that is owned or possessed by another, when * * * *
 [r]egardless of the value of the property or the amount of damage done, the property or its equivalent is necessary in order for its owner or possessor to engage in the owner's or possessor's profession, business, trade, or occupation."
 {¶ 7} On August 10, 2007, the jury returned a verdict of guilty to the amended charge.
 {¶ 8} On September 12, 2007, the trial court imposed a prison sentence of twelve months. On the same day, Johnson was sentenced in a separate case, CR-491543, in which he was ordered to serve an aggregate term of imprisonment of six years: three years for a firearm specification, two years on an underlying felonious assault charge, and one year for having a weapon under disability. Johnson's twelve-month sentence in the case subjudice was ordered to run concurrent to the time imposed in CR-491543.
 {¶ 9} During the jury trial in the instant case, the State presented only two witnesses: Eric McGreer (McGreer), an institutional guard with the Second District and Sergeant Jenny Socha (Socha) a City of Cleveland police officer. The defense did not present any witnesses. The following facts were adduced from the two-day jury trial. *Page 5 
 {¶ 10} McGreer testified that on December 7, 2006, Johnson was located in an observation cell, which is a cell used for prisoners who are out of control or have some type of medical problems. While he was working in the office next to the observation cell, McGreer heard the toilet located in the observation cell being flushed repeatedly. When he went to see what was occurring, he observed that Johnson had rolled up his foam sleeping mat, had stuffed it into the toilet, and was repeatedly flushing the toilet. The repeated flushing caused water in the toilet to overflow into the observation cell, the adjoining staging area, and the institutional guard office.
 {¶ 11} McGreer further testified that Johnson was repeatedly told to stop flushing the toilet. Instead of obeying officers' orders, Johnson continued to flush the toilet, taunting them to come in after him. When Johnson refused to obey continued orders to stop flushing the toilet, officers opened the door and told him to step to the back of the cell with hands on the wall. When Johnson refused to obey these directives, the officers took him to the ground and handcuffed him. Johnson remained in the observation cell. The officers then proceeded to remove the foam sleeping mat from the toilet and clean up the water in the observation cell, the staging area, and the guard office, which according to McGreer was a half inch to an inch deep in places.
 {¶ 12} Both McGreer and Socha testified that the jail was closed to incoming prisoners for approximately two hours. Among Socha's duties as officer in charge of the Second District on December 7, 2006, was supervision of the jail. Socha testified that she decided to close the jail to incoming prisoners for approximately two hours as she was *Page 6 
concerned about possible injuries from falls given the presence of excess water covering the cement floor in certain areas of the jail.
 {¶ 13} Socha testified the foam sleeping mat, wet from being in the toilet, was thrown into the sally port area of the jail, and the jail was closed for approximately two hours so the floor could be mopped up and the affected areas had time to dry.
 {¶ 14} Johnson appeals his conviction, raising five assignments of error for our review.
ASSIGNMENT OF ERROR I.
 "THE TRIAL COURT ERRED IN PERMITTING THE STATE TO AMEND THE INDICTMENT FROM A VIOLATION OF R.C. 2909.05(B)(2) TO A VIOLATION OF R.C. 2909.05(B)(1)(b), AS THE LATER [SIC] OFFENSE IS NOT A LESSER INCLUDED OR INFERIOR OFFENSE OF VANDALISM AS INDICTED."
 {¶ 15} Without demonstrating this contention from the record, Johnson contends that the trial court found R.C. 2909.05(B)(1)(b) to be a lesser included offense. The State does not argue that R.C. 2909.05(B)(1)(b) is a lesser included offense. Rather the State argues that the trial court properly granted its motion to amend the indictment pursuant to Crim. R. 7(D) so that the vandalism charge submitted to the jury would comport with what the State believed the evidence would show. It argues that Crim. R. 7(D) has purposes other than amending indictments to lesser included offenses, and this was not the purpose of the amendment in the instant case.
 {¶ 16} In the absence of a full transcript of the proceedings, including the State's motion to amend and the trial court's ruling on the motion on the record, and given the *Page 7 
appellant has the burden of demonstrating what occurred, we must presume the regularity of the proceedings below. See State v.Bonds, Cuyahoga App. No. 83866, 2004-Ohio-3483, at ¶ 14.
 {¶ 17} The Supreme Court of Ohio recently held in State v. Davis, Slip Opinion No. 2008-Ohio-4537, that "Crim. R. 7(D) does not permit the amendment of an indictment when the amendment changes the penalty or degree of the charged offense; amending the indictment to change the penalty or degree changes the identity of the offense." In the instant case, the amendment of the indictment did not change the penalty or degree of the charged offense, both were felonies of the fifth degree as stated by both parties and did not change the identity of the crime of vandalism as charged. Hence the amendment was permissible under Crim. R. 7(D).
 {¶ 18} Moreover, as in this case, "when an amendment is made to the substance of the indictment * * * or to cure a variance between the indictment * * * and the proof, the defendant is entitled to a discharge of the jury on the defendant's motion, * * * and to a reasonable continuance, unless it clearly appears from the whole proceedings that the defendant has not been misled or prejudiced by the defect or variance[.]" Crim. R. 7(D). Johnson did not move for a discharge of the jury, which had already been impaneled, nor did he move the trial court for a continuance. Consequently, Johnson has waived any objection on this basis. Furthermore, it is clear from the record that Johnson was not misled or prejudiced by the amendment herein because he was well aware that he was still being charged with vandalism as a felony of the fifth degree, but only under a different section of R.C. 2909.05. *Page 8 
 {¶ 19} The first assignment of error is overruled.
ASSIGNMENT OF ERROR II.
 "THE APPELLANT'S CONVICTION FOR VANDALISM IS NOT SUPPORTED BY SUFFICIENT EVIDENCE."
ASSIGNMENT OF ERROR III.
 "THE APPELLANT'S CONVICTION FOR VANDALISM IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 20} In his second assignment of error, Johnson argues that his conviction was not supported by sufficient evidence. In his third assignment of error, Johnson contends that his conviction was against the manifest weight of the evidence. As these arguments involve different standards of review but involve a review of the same evidence, we discuss them together.
 {¶ 21} The standard of review for sufficiency of evidence is set forth in the seminal case of State v. Bridgeman (1978), 55 Ohio St.2d 261.
 "Pursuant to Criminal Rule 29 (A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." Id. at syllabus.
 {¶ 22} We noted in State v. Bradley, Cuyahoga App. No. 87024,2006-Ohio-4589, that "Bridgeman must be interpreted in light of the sufficiency test outlined in State v. Jenks (1991), 61 Ohio St.3d 259
* * *." The Supreme Court held:
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average *Page 9 
mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Bradley at ¶ 12. (Citation omitted.)
 {¶ 23} According to State v. Thompkins, 78 Ohio St.3d 380,1997-Ohio-52, the standard in reviewing a weight of the evidence challenge is a distinct legal concept both quantitatively and qualitatively different from the sufficiency standard.Thompkins further describes this standard as follows:
 "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence
sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief (Emphasis in original.)
 * * * `The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Id. at 387. (Internal citations omitted.)
 {¶ 24} The essential elements of vandalism charged against Johnson in the amended indictment are set forth in R.C. 2909.05(B)(1)(b), which provides:
 "No person shall knowingly cause physical harm to property that is owned or possessed by another, when * * * [r]egardless of the value of the property or the amount of damage done, the property or its equivalent is necessary in order for its owner or possessor to engage in the owner's or possessor's profession, business, trade, or occupation." *Page 10 
 {¶ 25} In the instant case, the State's evidence demonstrated that Johnson knowingly caused physical harm to property that was owned or possessed by the City of Cleveland, and the property was necessary in order for its owner or possessor to engage in its business of operating its jail.
 {¶ 26} McGreer and Socha testified that Johnson utilized a foam mat as an instrument to block the toilet and to cause flooding in the observation cell, staging area, and the institutional guard office, despite orders to stop, and did so while taunting the officers to come in after him. By flooding these areas with a half inch to an inch of water, Johnson caused physical harm to the cement floor of the jail for a duration of approximately two hours. It took that amount of time for affected areas of the cement floor to be mopped and dried before city employees could safely resume use of these areas for the movement and/or confinement of prisoners without fear of injury from falls on the wet cement floors by either prisoners or employees of the City of Cleveland.
 {¶ 27} The evidence clearly demonstrated that the property, the cement floor of the Second District jail owned by the City of Cleveland, was affected by flooding in that the jail and was closed for nearly two hours to incoming prisoners. The booking and jailing of incoming prisoners is most certainly a necessary element of jail operation. Johnson knowingly caused physical harm to a cement floor of the Second District city jail, property owned by the City of Cleveland, where such property, without the physical harm of excess water, was necessary for the City of Cleveland in order to engage in the business of operating its jail. *Page 11 
 {¶ 28} In a recent case, State v. Dunfee, 177 Ohio App.3d 239,2008-Ohio-3615, a conviction involving damage to a police cruiser owned by a county sheriff's department was upheld under R.C. 2909.05(B)(1)(b). The court determined nothing in R.C. 2909.05 precluded a prosecution under R.C. 2909.05(B)(1)(b) when the property at issue was governmental property.
 {¶ 29} "R.C. 2909.05(B)(1)(b) does not limit the ownership of property that is subject to its terms. Rather, the only limitation is based on the use of the property. We find nothing in R.C. 2909.05 which precludes a prosecution under R.C. 2909.05(B)(1)(b) when the property at issue is governmental property."
 {¶ 30} Further, the court in Dunfee rejected claims that there was insufficient evidence that the damaged property, the cruiser, was necessary to carry out its law enforcement functions, and claims that the State failed to establish that the sheriff's department engages in a "profession, business, trade, or occupation." The Dunfee court found that there was sufficient evidence to support the conclusion that the cruiser window was necessary for the sheriff's department to engage in law enforcement. The damaged sheriff's cruiser could not be used for transporting prisoners or other individuals in custody while the window was broken, and it was unusable during the two hours that the window was being repaired. The court found that, even though the sheriff's department had eleven other cruisers a reasonable fact-finder could have concluded that each cruiser was necessary for the functioning of the sheriff's department. *Page 12 
 {¶ 31} After review of the evidence and application of the distinct standards of review, we find that Johnson's conviction was supported by sufficient evidence and was not against the manifest weight of the evidence. Construing the evidence in a light most favorable to the State, there was sufficient evidence presented for a rational trier of fact to conclude that the essential elements of vandalism, as set forth in the amended indictment, was proven beyond a reasonable doubt. The movement of prisoners into a jail and inside a jail is a basic function of law enforcement, and a jail with full access to all areas capable of performing this function is necessary to the business of the City of Cleveland's Second District jail.
 {¶ 32} We further conclude that the trier of fact did not lose its way in convicting Johnson of vandalism under the indictment as amended and that his conviction was not against the manifest weight of the evidence.
 {¶ 33} Accordingly, Johnson's second and third assignments of error are without merit and are overruled.
ASSIGNMENT OF ERROR NO. IV.
 "THE TRIAL COURT ERRED IN FAILING TO INCLUDE A COPY OF THE WRITTEN JURY INSTRUCTIONS IN THE COURT FILE."
 {¶ 34} It is undisputed that the trial court did not maintain the written jury instructions with the "papers of the case" as provided for in R.C. 2945.10(G). Johnson asserts that this failure was a "structural error" that so affected his constitutional rights that it requires reversal. The State argues that failure to include the written instructions as "papers of the case" does not warrant reversal because Johnson did not object to the trial court's failure to *Page 13 
include them, he did not challenge the instructions themselves in his brief, and he cannot demonstrate that he has been materially prejudiced as a result of their absence.
 {¶ 35} The Ohio Supreme Court has held "[t]he failure of the trial court to maintain written jury instructions with the `papers of the case' in violation of R.C. 2945.10(G) is not a structural error."State v. Perry (2004), 101 Ohio St.3d 118, at syllabus.
 "The Perry court rejected the argument that a defendant is entitled to a conclusive presumption that such an error affected her substantial rights, thereby requiring an automatic reversal of her conviction.
 Under Perry, a reviewing court must determine whether a violation of R.C. 2945.10(G) is cause for reversal by first addressing whether the error should be analyzed pursuant to the `harmless error' standard of Crim. R. 52(A) or the `plain error' standard of Crim. R. 52(B)." City of Columbus v. Mullins, 10th
Dist. No. 03AP-623, 2004-Ohio-1059 at ¶ 24, 25.
 {¶ 36} Rule 52. Harmless Error and Plain Error provides as follows:
 "(A) Harmless error.
 Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded.
 (B) Plain error.
 Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."
 {¶ 37} Further, in Perry, where a defendant did not object to the failure to include written instructions with the "papers of the case," the court stated:
 "Under Crim. R. 52(B), the defendant bears the burden of demonstrating that a plain error affected his substantial rights. * * * Even if the defendant satisfies this burden, an appellate court has discretion to disregard the error and should correct it only to `"prevent a manifest miscarriage of justice.'" Id. at ¶ 14, quoting State v. Barnes (2002), 94 Ohio St.3d 21, 27, 2002-Ohio-68 * * *, *Page 14 
quoting State v. Long (1979), 53 Ohio St.2d 91, at paragraph three of syllabus." (Emphasis in original.)
 {¶ 38} Although the trial court's failure to include the written jury instructions with the "papers of the case" under R.C. 2945.10(G) was an obvious error and a "deviation from a legal rule" under the decision of the Ohio Supreme Court in Perry, at ¶ 8, Johnson failed to meet his burden of demonstrating that the trial court's failure to preserve its written jury instructions affected the outcome of his trial. Given that failure, we find no plain error herein.
 {¶ 39} Even if Johnson had demonstrated the trial court erred regarding retention of the written jury instructions with the papers of the case, this court still has discretion to disregard the plain error absent a manifest miscarriage of justice. The record herein does not support a conclusion that a manifest miscarriage of justice would result in upholding Johnson's conviction despite the trial court's noncompliance with R.C. 2945.10(G).
 {¶ 40} For the foregoing reasons, Johnson's fourth assignment of error is overruled.
ASSIGNMENT OF ERROR NO. V.
 "THE TRIAL COURT ERRED IN SENTENCING MR. JOHNSON FOR A FELONY OF THE THIRD DEGREE AS THE UNDERLYING CHARGE IS A FELONY OF THE FIFTH DEGREE."
 {¶ 41} Both Johnson and the State agree that the original indictment set forth vandalism, a felony of the fifth degree, and that the indictment amended by the State on August 8, 2007, without objection from Johnson, also set forth vandalism, a felony of the *Page 15 
fifth degree. The court's journal entry of September 17, 2007, clearly contains a typographical error as to the degree of felony.
 {¶ 42} The trial court's sentencing entry was based on the amendment of the indictment to another section of vandalism under R.C. 2909.05(B)(1)(b), and on the jury's verdict finding Johnson guilty of R.C. 2909.05(B)(1)(b). Moreover, the twelve-month sentence imposed by the trial court based on that particular section of vandalism is language consistent with a sentence on a felony of the fifth degree. Johnson was not given more time than was allowed for a felony of the fifth degree, and his sentence imposed under R.C. 2909.05(B)(1)(b), vandalism, a felony of the fifth degree, ran concurrent to the time imposed in CR-491543, in which Johnson was ordered to serve an aggregate term of imprisonment equaling six years.
 {¶ 43} Hence, we find that the trial court properly sentenced Johnson to a felony of the fifth degree under R.C. 2909.05(B)(1)(b), and overrule the fifth assignment of error.
 {¶ 44} Judgment affirmed. However, this case is remanded to the trial court solely for the correction of the journal entry of September 17, 2007, correcting "F-3 as charged in the indictment" to "F-5 as charged in the amended indictment." Journal entries must conform to the demonstrated record and must be corrected to reflect the charge as submitted to the jury and for which Johnson was convicted.
It is ordered that appellee recover from appellant costs herein taxed.
 The court finds there were reasonable grounds for this appeal. *Page 16 
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 SEAN C. GALLAGHER, P.J., and ANTHONY O. CALABRESE, JR., J., CONCUR *Page 1