[Cite as *State v. White*, 2014-Ohio-1446.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 25792 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2012-CR-3836 |
| v. | : | |
| | : | |
| JAMES K. WHITE | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 4th day of April, 2014.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by APRIL F. CAMPBELL, Atty. Reg. #0089541, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

LUCAS W. WILDER, Atty. Reg. #0074057, 120 West Second Street, Suite 400, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FAIN, J.

{¶ 1}    Defendant-appellant James White appeals from his conviction and sentence for

Domestic Violence, in violation of R.C. 2919.25.  He contends that the trial court erred by

denying his Crim.R. 29 motion for acquittal, because the State failed to present evidence sufficient to support the conviction. He also contends that the conviction is against the manifest weight of the evidence.

{¶ 2} We conclude the State offered sufficient evidence to overcome White's Crim.R. 29 motion for acquittal and to support the conviction on the charge of Domestic Violence. We also conclude that the conviction is not against the manifest weight of the evidence. The judgment of the trial court is Affirmed.

## I. The Offense

{¶ 3} On December 26, 2012 Shawnta Griffeth was in White's room located in a boarding house. She heated up some leftovers and the couple sat down to eat. Griffeth then fell asleep. She awoke to White yelling at her. White began to hit her on the head, breasts, back and sides with a belt buckle. He appeared to be upset over a text message that Griffeth had received. White then began to hit Griffeth with a boot. The entire incident lasted for approximately thirty minutes. Griffeth sustained injuries and was treated at Good Samaritan Hospital.

## II. The Course of Proceedings

{¶ 4} White was indicted for one count of Domestic Violence (2 priors), two counts of Rape and one count of Kidnapping.[1] During his jury trial White stated that he met Griffeth on

---

[1] The Rape counts stemmed from Griffeth's claim that White forced her to perform oral sex on him at two separate times during the incident.

November 23 or 24, 2012. He testified that she "came onto" him and that they immediately engaged in consensual sex. He denied that Griffeth lived with him. Instead, he testified that she spent the night with him "maybe once or twice." On cross-examination, he testified that she had stayed "maybe seven or eight times." He testified that Griffeth did not have any clothes in his room and that she wore some of his clothes. He testified that while he was at work "she would straighten up around the house." White testified that he bought the food and that he cooked for Griffeth. He admitted to hitting Griffeth twice with his fist, "two or three times with [his] boot then once with [his] belt."

{¶ 5} Griffeth testified that she met White in late October or early November, 2012, they immediately began a sexual relationship, and she began residing with him. She testified that their relationship was exclusive. She testified that she loved White and that he told her he also loved her. She testified that she cleaned the room and dishes while White was at work and that she kept some clothes in the room.

{¶ 6} Following trial, White was convicted of Domestic Violence. The jury was unable to reach a verdict on the remaining counts. After trial, White pleaded guilty to a bill of information on the charge of Kidnapping. He was sentenced to three years in prison for Domestic Violence, and to four years in prison for Kidnapping, to be served concurrently, for a total sentence of four years in prison. White appeals.

**III.    Under *McGlothan*, Griffeth's Testimony that She Lived with White for at Least Two Months Preceding the Offense Supports a Finding that She Cohabited with him, and Was Therefore a Family or Household Member**

**{¶ 7}** White's sole assignment of error states as follows:

THE TRIAL COURT ERRED IN OVERRULING WHITE'S RULE 29 MOTION AND THE JURY'S VERDICT WAS AGAINST THE SUFFICIENCY AND WEIGHT OF THE EVIDENCE BECAUSE THE VICTIM WAS NOT A FAMILY OR HOUSEHOLD MEMBER UNDER THE DOMESTIC VIOLENCE STATUTE.

**{¶ 8}** White contends that he could not be convicted of Domestic Violence, because the State failed to prove that the victim was either a family or a household member, as required by R.C. 2919.25. He also argues that the conviction is against the weight of the evidence.

**{¶ 9}** Crim. R. 29(A) states that a court shall order an entry of judgment of acquittal if the evidence is insufficient to sustain a conviction for the charged offense. "Reviewing the denial of a Crim. R. 29 motion therefore requires an appellate court to use the same standard as is used to review a sufficiency of the evidence claim." *State v. Witcher*, 6th Dist. Lucas No. L-06-1039, 2007-Ohio-3960. "In reviewing a claim of insufficient evidence, '[t]he relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " (Citations omitted). *State v. Crowley*, 2d Dist. Clark No. 2007 CA 99, 2008-Ohio-4636, ¶ 12.

**{¶ 10}** "A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *State v. Cassell*, 2d Dist. Clark No. 09CA0064, 2011-Ohio-23, ¶ 46. When a conviction is challenged on appeal as being against the manifest weight of the evidence, " '[t]he

court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 11} The offense of Domestic Violence is proscribed by R.C. 2919.25, which provides in pertinent part as follows:

(A) No person shall knowingly cause or attempt to cause physical harm to a family or household member.

* * *

(F) As used in this section and sections 2919.251 and 2919.26 of the Revised Code:

(1) "Family or household member" means any of the following:

(a) Any of the following who is residing or has resided with the offender:

(i) A spouse, a person living as a spouse, or a former spouse of the offender;

* * *

(2) "Person living as a spouse" means a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender, or who otherwise has cohabited with the offender within five years prior to the date of the alleged commission of the act in question.

{¶ 12} White contends that the State failed to prove that Griffeth was a family or

household member, as defined in the statute. He cites *State v. Williams*, 79 Ohio St.3d 459, 683 N.E.2d 1126 (1997), paragraph two of the syllabus, for the proposition that "the essential elements of 'cohabitation' are (1) sharing of familial or financial responsibilities and (2) consortium."

**{¶ 13}** *Williams* involved a defendant and victim who "were going together," but maintained separate residences. *Id.* at 460. The Supreme Court of Ohio has stated that its holding in *Williams* only applies "when the victim and the defendant do *not* share the same residence[.]" *State v. McGlothan*, 138 Ohio St.3d 146, 2014-Ohio-85, 4 N.E.3d 1021 ¶ 13.

**{¶ 14}** "The burden of establishing cohabitation is not substantial." *State v. Woullard*, 158 Ohio App.3d 31, 2004-Ohio-3395, 813 N.E.2d 964, ¶ 73 (2d Dist.2004). In the case before us, Griffeth testified that she was living with White in his room in a boarding house. There is evidence that she had been living there for about two months when the incident occurred. A reasonable jury could find, from Griffeth's testimony, that White and Griffeth resided together continuously from the time she moved in with him until the time of the offense. White testified that she had only stayed with him eight or nine nights during this time, but a reasonable jury could have chosen not to believe him on this point. Finally, there is no indication in this record, in contrast with *Williams*, that the victim and the offender maintained separate residences during their relationship.

**{¶ 15}** We find no authority, and White cites none, for the proposition that there is a minimum duration that a couple must live together before they are accorded the protection of the Domestic Violence laws. If there is a minimum, we conclude that the two-month duration supported by Griffeth's testimony exceeds it.

{¶ 16}   We conclude that sufficient evidence exists for a rational trier of fact to conclude that White and Griffeth cohabited, and that they were therefore household members.   We further conclude that this is not the rare case where the jury lost its way in deciding to credit Griffeth's testimony over White's.   Accordingly, the sole assignment of error is overruled.

## IV.   Conclusion

{¶ 17}   White's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

DONOVAN and HALL, JJ., concur.

Copies mailed to:

Mathias H. Heck
April F. Campbell
Lucas W. Wilder
Mary L. Wiseman